## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| STEVEN FRAKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-1444 |
| | ) |
| ELBA-SALEM FIRE PROTECTION, DISTRICT, TRUSTEE GERALD BUCKMAN, in his official capacity, TRUSTEE EUGENE SAUNDERS, in his official capacity, and TRUSTEE GREGORY A. WESSEL, in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on Elba-Salem Fire Protection District's Motion [25] for Summary Judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, Elba-Salem Fire Protection District's Motion [25] is GRANTED IN PART and DENIED IN PART.

## STATEMENT OF FACTS

Plaintiff, Steven Frakes ("Frakes"), was employed by Defendant, Elba-Salem Fire Protection District ("Elba-Salem"), as a volunteer firefighter from approximately December 1, 1999, to July 29, 2014. Elba-Salem is a local governmental unit following the laws of the State of Illinois. Before becoming a volunteer firefighter for Elba-Salem, Frakes did unpaid volunteer work for Elba-Salem. Defendants, Gerald Buckman ("Buckman"), Eugene Saunders ("Saunders"), and Gregory A. Wessel ("Wessel") are and were at all pertinent times, trustees of

1

the District appointed by the Knox County Board. Wessel is also a volunteer firefighter, as well as, Secretary for the trustees.

The trustees have the power to terminate volunteer firefighters, but there is neither a formal process, nor a set of rules, for firing a volunteer firefighter. Elba-Salem officers are elected annually by volunteers, have their own training and business meetings, and are under the management and supervision of the elected fire chief. Frakes admitted that is the procedure followed at Elba-Salem, but denied the trustees are allowed to delegate management and supervision responsibilities over firefighters to the fire chief. He claims that under the Fire Protection District Act, the trustees are responsible for those functions. 70 ILCS 705/0.01, et seq., 705/6. The volunteer firemen are paid between $2.00 and $5.00 per call. Elba-Salem also reimburses tuition and expenses for all firefighter training sessions. An annual banquet is held in January each year where the firefighters receive their reimbursement checks for the previous year.

From 2002 through 2013, Frakes repeatedly stated that Elba-Salem was not following the requirements of the Fire Protection District Act. 70 ILCS 705/0.01 et seq., 705/6. Frakes claims the trustees were unlawfully delegating some of their responsibilities to the firefighters themselves, or to officers elected by the firefighters. In May 2013, Fire Chief Phil Goedeke ("Goedeke") lost the election to John McKinty ("McKinty"). On May 31, 2013, and July 2, 2013, Goedeke and Frakes filed complaints with the Illinois Attorney General alleging violations of the Illinois Open Meetings Act. Since the 2013 complaint, Frakes admits the District has been more compliant with the Open Meetings Act.

While a volunteer firefighter, Frakes observed other Elba-Salem firefighters discussing Elba-Salem business in local bars away from the firehouse and often complained to the

2

firefighters about this practice. Frakes also regularly complained about Elba-Salem violating rules regarding the Elba-Salem cadet program. In the spring of 2013, Frakes was involved in a dispute with the wife of Assistant Chief McKinty over t-shirts for an annual fundraiser at My Place Bar & Grill, which is owned and operated by Mrs. McKinty. Frakes claims McKinty, who subsequently became Fire Chief, damaged his reputation over the t-shirt controversy. However, Elba-Salem claims the fundraiser did not even involve fire department business. Elba-Salem firefighters regularly participated in the fundraiser using Elba-Salem buildings and equipment, which Frakes argues constitutes fire department business.

Prior to 2013, Frakes regularly complained about another firefighter, Ken Vallas ("Vallas"), coming to calls under the influence of alcohol. In August 2013, Frakes joined five other firefighters by signing a petition to remove Vallas for aggravation, intimidation, and insubordination. Based on the recommendation of Chief McKinty, the trustees suspended Vallas on October 3, 2013, for six months for insubordination. Vallas was asked by McKinty to attend the annual recognition dinner on January 25, 2014, which was during his suspension, to present an award to his daughter for Outstanding Cadet of the Year. At the annual dinner, volunteers were also presented with their reimbursement checks for the previous year. The dinner was customarily attended by volunteer firefighters, the auxiliary, parents of cadet's, and some trustees. On February 3, 2014, Frakes and others signed a petition demanding Vallas be terminated for attending the dinner and violating his suspension. The trustees reprimanded McKinty for causing dissention within the Department by allowing Vallas to attend the dinner, but the District's attorney found there was no impropriety or illegality for Vallas to attend the dinner while suspended. Complaints were made by multiple firefighters to the trustees for not

supporting Vallas' ability to attend the dinner and about Frakes' disruptive behavior at meetings. On April 8, 2014, Vallas was reinstated as a fireman.

In the summer of 2014, members of the Elmwood and Farmington Fire Districts complained to McKinty about problems with Frakes. In July 2014, officers from the Elmwood Fire Department complained to Elba-Salem officials about an alleged email Frakes sent disrespecting a retired fireman. The nature of Farmington's complaints regarding problems with Frakes were not specified in the record. The majority of Elba-Salem's volunteer firemen also complained to McKinty about Frakes, all of which the trustees were aware. At that point, Elmwood threatened to cease mutual aid support with Elba-Salem, meaning that Elmwood would no longer provide back-up to Elba-Salem when additional resources were needed. By July 16, 2014, Wessel was presented with a petition signed by ten firefighters in support of terminating Frakes in order "to promote better harmony." Frakes was later notified of the petition through an email. Wessel also emailed Frakes regarding the complaints about him from other fire districts, and a date was set for a hearing on July 22, 2014.

On July 22, 2014, Chief McKinty spoke in favor of terminating Frakes, and Frakes was given the opportunity to address the allegations against him. However, the trustees decided not to take action against Frakes at that time. One day later, July 23, 2014, First Captain Britt Ewalt sent an email to the trustees complaining about their lack of support for Chief McKinty and failure to terminate Frakes. At least four other firefighters, in addition to Chief McKinty, complained about Frakes not being terminated, and another hearing was held on July 29, 2014, to reconsider terminating Frakes. At that meeting, Chief McKinty named seven additional firemen who threatened to quit if Frakes was not fired. Frakes was not surprised by the petition and was aware that he caused disharmony and dissention throughout the department in 2014. At one of

4

the special meetings in July 2014, Buckman said Frakes was "a pain in the ass" and a "troublemaker," who was always protesting and getting up at meetings. The trustees unanimously voted in favor of terminating Frakes on July 29, 2014. Trustee Buckman indicated that Frakes was terminated because he was regarded as a troublemaker and there was controversy over the many petitions and letters he wrote during his tenure with the fire department.

Before the annual dinner in January 2015, Frakes' attorney was mailed the amount Frakes was owed for training reimbursement and calls in 2014 prior to his termination. Defendant has moved for summary judgment, and this Order follows.

## DISCUSSION

The Court will grant summary judgment if the movant shows there is no genuine dispute of any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment. *Basith v. Cook County,* 241 F.3d 919, 926 (7th Cir. 2001). Instead, sufficient evidence must be presented to allow a jury to render a verdict in the plaintiff's favor. *Id.* The non-moving party must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390 (7th Cir. 1999). For a court to weigh the evidence on a summary judgment motion is improper. *Kodish v. Oak Brook Terrace Fire Protection District*, 604 F.3d 490, 505 (7th Cir. 2010). Furthermore, mere conclusory allegations do not constitute evidence. *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). However, uncorroborated, self-serving testimony, "[i]f based on personal knowledge or firsthand experience," can be evidence of disputed material facts. *Berry v. Chicago Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010).

I.      **Civil Rights Violation Under 42 U.S.C. § 1983**

In cases involving fire departments, if the undisputed evidence shows the defendants had a reasonable basis for terminating an employee, then supervisors are entitled to summary judgment. *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013). To make out a prima facie case of First Amendment retaliation, a plaintiff must present evidence that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). A "motivating factor" has been defined as a sufficient, but not necessary, condition to prove liability. In *Olendzki v. Rossi*, the court said in § 1983 claims, when a public employee complains "directly up the chain of command to his supervisors" the complaints are not protected under the First Amendment. 765 F.3d 742, 749 (7th Cir. 2014). General grievances that address job duties raise only private interests and are not entitled to First Amendment protection. *Id*. Furthermore, the First Amendment does not protect a public employee's speech when statements are made pursuant to official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Whether speech is a matter of public concern is a question of law and the court must look to the "content, form, and context" of the statement. *Connick v. Myers*, 461 U.S. 138, 147-48. Speech involving a private or personal interest, rather than a community interest, does not qualify for First Amendment protection. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). A government employer is entitled to restrict an employee's speech if it can prove the interest of the employee as a private citizen is outweighed by the interest of the government employer in

promoting efficiency of the public service performed. *Pickering v. Board of Education*, 391 U.S. 563, 573 (1968). The *Pickering* balancing test as set forth in *Lalowski v. City of Des Plaines*, 789 F.3d 784, 791 (7th Cir. 2015), summarizes the factors forming a fact-intensive inquiry as follows:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

789 F.3d at 791.

Recently, this analysis has been applied to a fire department employee's speech. *Moss v. City of Pembroke*, 782 F.3d 613, 621 (11th Cir. 2015). The court said there is no need to prove actual disruption, but a "reasonable possibility of adverse harm is all that is required." *Id.* at 622. Furthermore, the court held "the City's interest in avoiding dissention and discord in the fire department…outweighed Plaintiff's interest in expressing his opposition." *Id.* at 621.

    To make a prima facie case of First Amendment retaliation, Frakes must first prove that his speech was constitutionally protected. Frakes' original complaint about Vallas coming to work intoxicated would qualify as such because Frakes was speaking as a private citizen on a matter of public concern. The protection is not lessened by the fact that his complaints concerning Vallas were addressed and resulted in sanctions.

    Frakes also complained about Vallas attending the annual firefighter's banquet while on suspension after Vallas had been asked to attend the banquet by Chief McKinty. This complaint would be considered a general grievance, as would Frakes' petition requesting that Vallas be

fired for attending the banquet.  Whether Frakes spoke as a citizen on a matter of public concern is an important distinction, because in making complaints directly up the chain of command to his supervisors regarding his official duties, he was not speaking on an issue of political, social, or other concern to the community.  He is therefore not entitled to First Amendment protection. *Olendzki*, 765 F.3d at 749.  "While the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420.

Frakes also alleged violations of the Illinois Open Meetings Act, 5 ILCS 120/1.01 *et seq*.  The allegations were addressed by the Illinois Attorney General and, subsequently, Frakes admitted that Elba-Salem complied with the Act.  However, the fact that Frakes later admitted compliance doesn't detract from his First Amendment protection, as his complaint about a lack of transparency in the operations of a local government entity like the fire department was speaking on a matter of public concern.

Frakes has also presented a number of additional complaints in his response to Elba-Salem's Motion for Summary Judgment.  Assuming that these additional complaints are properly before the Court, Frakes claims that Elba-Salem and its firefighters were not complying with the Illinois Fire Protection District Act in terms of their internal assignment of duties.  70 ILCS 705/6(b).  The act states, "[t]he board may prescribe the duties and fix the compensation of all the officers and employees of the Fire Protection District."  *Id.*  Frakes claims that the authority to hire, fire, appoint, promote, discipline, and terminate firefighters is solely the duty of the trustees, but was improperly delegated to some firefighters and elected officials.  However, as is clear from the language above, there is no prohibition against the trustees delegating the power to regulate the day-to-day operations.  70 ILCS 705/6(b) (stating that "the board <u>may</u> prescribe

duties"). Frakes' speech addressed his official duties and was not entitled to First Amendment protection. *Garcetti*, 547 U.S. at 421. Additionally, his complaints under the Fire Protection District Act were "ordinary matters of internal operation and lacking connection to any matter of political, social, or other concern to the community," which fails to rise to the level of speech entitled to First Amendment protection. *Spiegla*, 371 F.3d at 936. Put another way, Frakes was not speaking as a private citizen and his complaints were not of public concern, but rather, workforce grievances. Therefore, Frakes' complaints concerning the Fire Protection District Act were not entitled to First Amendment protection.

Another supplemental complaint regards Elba-Salem firefighters discussing confidential firefighter business outside of the firehouse. The record does not point to any policy or rule that prohibits volunteer firefighters from discussing department business in public. Frakes also failed to name any firefighters, times, or specific information that may have been discussed in local bars and other places. This argument was undeveloped and appears to be another workplace grievance that is not entitled to First Amendment protection. He was not speaking as a private citizen, nor was his complaint a matter of public concern, especially since there was no rule or regulation preventing the volunteer firefighters from discussing work related matters outside the firehouse. Therefore, Frakes' complaint regarding firefighters talking about firehouse business in local bars was not protected by the First Amendment.

Frakes further accused Elba-Salem of violating its own rules regarding the cadet program. These complaints included cadets participating directly in firefighting, cadets driving fire equipment vehicles, and cadets appearing on calls late at night and early in the morning. However, there is no documentation of these complaints by Frakes, and he cited no rule prohibiting cadets from participating in the alleged activities. Even if these alleged complaints

occurred, they were "ordinary matters of internal operation and lacking connection to any matter of political, social, or other concern to the community" are not entitled to First Amendment protection. *Id.* In addition, the cadet complaints relate to Frakes' official duties and are workplace grievances not entitled to First Amendment protection under *Garcetti*. 547 U.S. at 421. Thus, Frakes' complaints regarding the cadet program were not protected by the First Amendment.

The last supplemental complaint concerns a dispute with Chief McKinty's wife, Jodi McKinty, over the printing of t-shirts for an annual fundraiser at My Place Bar & Grill, owned and operated by Mrs. McKinty. Frakes questioned whether or not t-shirts for the fundraiser could be printed with the St. Jude logo without St. Jude's permission. This inquiry led to tension between Frakes and McKinty prior to McKinty's promotion to chief. Frakes admitted that the fundraiser did not involve department business; the fundraiser was an event the Elba-Salem firefighters regularly participated in as individuals, but did not involve the department whatsoever. Since the dispute included McKinty's wife, not an Elba-Salem firefighter, and was an event not involving official department business nor a matter of public concern, Frakes' complaint regarding the t-shirts and fundraiser was not entitled to First Amendment protection.

Frakes has shown that two instances of speech were protected, namely his complaints regarding Vallas coming to work while intoxicated and the allegations regarding violation of the Illinois Open Meetings Act. In these instances, Frakes spoke as a citizen addressing topics of "political, social, or other concern to the community." *Connick*, 461 U.S. at 146. The other identified statements are entitled to no First Amendment protection, as they were speech addressing his job duties as a fireman, general employee grievances, or raised his own private interests.

Having demonstrated some speech entitled to constitutional protection, the Court must now address the remaining factors under *Kidwell*. As Frakes was terminated, there is no question that he suffered a deprivation likely to deter free speech, leaving the question of whether his speech was at least a motivating factor in Elba-Salem's actions. 679 F.3d at 964.

When asked in his deposition about the reasons for Frakes' termination, Trustee Buckman indicated that the Open Meetings Act issue had "a little bit" to do with why he was terminated, as "[h]e started being a thorn in our side. He was trying to agitate." (Buckman Deposition at 184-85) He complained more frequently after McKinty became the chief and "got on a bandwagon as far as agitating, you know, anything he could come up with, petitions, letters." *Id*., at 186, 190-91. Carl Snyder, an Elba-Salem fireman, also states that he was present at both of the special meetings held in July 2014 and recalls Buckman saying that "Frakes was a 'pain in the ass' and was 'a troublemaker' and was always getting up and making protests at meetings." (Snyder Affidavit at ¶ 12)

While Elba-Salem offers clarifications and explanations casting these comments in a non-discriminatory light, they are sufficient to present a genuine issue of material fact as to whether Frakes' protected speech was a motivating factor in the decision to end his employment with the department that requires resolution at trial. Accordingly, the Motion for Summary Judgment must be denied with respect to Frakes' § 1983 claim.

## II. Common Law Retaliatory Discharge

Elba-Salem asserts that Frakes was an employee at-will under Illinois law, and Frakes does not dispute this contention. As a general rule in Illinois, an at-will employee may be discharged by his or her employer for any reason at any time. *Michael v. Precision Alliance Group LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014). An exception to that rule is retaliatory discharge

11

claims. In Illinois, retaliatory discharge claims have been allowed in two situations: (1) if an employee files a Workers Compensation claim; or (2) if an employee reports illegal activity or improper conduct otherwise known as "whistleblowing." *Id.* A prima facie case requires a showing that: "the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities (causation), and (3) the discharge violates a clear mandate of public policy." *Id.* When an employer gives a reason for terminating an employee, a retaliatory discharge claim is not automatically defeated. *Id*. at 1189. If the employer states a valid, non-pretextual basis for discharging an employee and the reason is believed by the trier of fact, then the causation element of retaliatory discharge is not met and summary judgment is appropriate. *Id.* (quoting *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 336 (1998).)

The Illinois Supreme Court has stated, "once a plaintiff establishes a prima facie case against the defendant, the defendant has the burden of rebutting the prima facie case with evidence of a legitimate, nonretaliatory reason for discharging the plaintiff." *Clemons,* 184 Ill. 2d at 338 (1998). Furthermore, "[i]f the defendant meets this burden, the plaintiff must then prove that the nonretaliatory reason asserted by the employer is pretextual. *Id*.

The Court has determined that Frakes' complaints about a firefighter reporting to duty while intoxicated and violations of the Illinois Open Meetings Act were entitled to First Amendment protection. In fact, both of these reports of improper conduct resulted in corrective action being taken by Elba-Salem and could be construed as "whistleblowing." Accordingly, Frakes has sufficiently demonstrated a prima facie case to shift the burden to Elba-Salem.

The trustees contend that Frakes was terminated because he was causing problems not only within Elba-Salem, but also within departments throughout the whole district. While there are certainly facts in the record that could be construed to support this justification, the record

also contains the above referenced comments by Buckman that could support a finding that Elba-Salem's stated reason is pretextual. *Michael*, 21 N.E.3d at 1188. Summary judgment is appropriate only when the employer states a valid, non-pretextual basis for discharge that is believed by the trier of fact and not shown to be pretextual. Clemons, 184 Ill.2d at 338. As a reasonable fact-finder could conclude that Frakes has created a genuine issue of material fact on this issue and made a credible showing of pretext, Elba-Salem is not entitled to judgment as a matter of law on his retaliatory discharge claim.

### III. Whistleblower Act Violation

The Illinois Whistleblower Act states, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Given this higher standard, it is questionable that Frakes' complaints to the trustees about Vallas coming to work intoxicated qualify as whistleblowing. Frakes' continued complaints after Vallas was suspended were not disclosing any illegal activity and also not entitled to whistleblower protection. Additionally, with the exception of the Illinois Open Meetings Act complaint, none of Frakes' other complaints were made to a government or law enforcement agency. The Illinois Open Meetings Act allegations were addressed and Frakes admitted better compliance with the Act. In addition, the Illinois Open Meetings Act complaints occurred in May and July 2013, roughly a year before his termination, and were not discussed at either meeting as a reason for Frakes' termination.

However, the complaint about the Illinois Open Meetings Act is a matter of public concern that was raised to the Illinois Attorney General. This, in conjunction with Buckman's comments, the initial vote not to terminate him, and the subsequent vote for Frakes' termination,

present a question of fact as to the reasons for the termination that must be addressed by a jury determination of credibility rather than summary judgment.

**IV. Wage Payment and Collection Act Violation**

Since the filing of Defendant's Motion for Summary Judgment [25], Frakes has been paid the correct amount for his calls and reimbursements in 2014.  Furthermore, Frakes acknowledged the check was received and in the correct amount and does not allege that he is entitled to any further payment.  Accordingly, this claim is now moot.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [25] is GRANTED IN PART with respect to the Wage Payment and Collection Act claim and DENIED in all other respects.  This matter is now ready for final pretrial conference.

Entered this 3rd day of August, 2016.

                                                          s/James E. Shadid
                                                          James E. Shadid
                                                          Chief United States District Judge